## No. 12,643.

### HALL *v.* CANNON.
(9 P. [2d] 1057)

Decided March 28, 1932.

Messrs. DINES, DINES & HOLME, Mr. ROBERT E. MORE, for plaintiff in error.

Mr. HUDSON MOORE, Mr. DAYTON DENIOUS, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court and are hereinafter designated as there.

One Hoffman bought an automobile of plaintiff and gave him a mortgage to secure unpaid purchase money. Hoffman also owed defendant and one Kortz. Plaintiff foreclosed his mortgage and sold the car to defendant at public auction. Defendant paid plaintiff's claim out of the purchase price and, conformable to a written contract theretofore entered into between the parties hereto, retained the balance and applied it on Hoffman's indebtedness to him. Kortz sued on his claim and garnisheed plaintiff. In that action attorneys employed by defendant, as provided in said contract, represented plaintiff. The latter was defeated and was obliged to pay Kortz. Thereupon he brought this suit alleging that defendant's said contract was to save him harmless, and that said attorneys, in representing him in said litigation, were negligent and inefficient. A motion to strike those portions of the complaint alleging this inadequate defense and damages arising therefrom was sustained. Issue was joined by answer and replication and at the close of plaintiff's evidence a motion for nonsuit was sustained and defendant had judgment for his costs. To review that judgment plaintiff prosecutes this writ.

Two questions requiring our consideration are presented by the assignments: (1) Was the contract between these parties a contract to indemnify or merely to defend litigation? (2) Was the motion to strike properly sustained?

1. Said contract recites that plaintiff has taken possession under his mortgage and advertised the car for sale; that defendant contends the mortgage is void as against creditors and is about to sue out a writ of attachment; and that, in consideration of defendant's "foregoing his right to such attachment," etc., plaintiff will transfer the equity to him. The clause here in question provides that defendant "will further defend said first party [plaintiff herein] against any or all suits or

actions which may be brought against it [him] because of the payment of said excess.'' Plaintiff says ''defend,'' as here used, means ''indemnify''; that if not, it is ambiguous and the ''background'' should be resorted to in aid of interpretation; and that so resorting we find from plaintiff's testimony that he stated, before signing, that he would not do so if there was any chance of loss, and was assured by defendant's attorney, and reassured by defendant himself, that there was no such chance.

■ Limiting our examination to the four corners of this contract, and considering internal evidence only, it would seem clear that plaintiff's theory is unsupported. These parties are business men, certainly reasonably familiar with the matters concerning which they dealt, and the use and common meaning of the terms they employed. It is improbable they would have said ''defend against suits'' when their meaning was ''indemnify'' or ''save harmless'' or ''pay all damages.'' There was certainly a dispute between them, their respective rights were at least in doubt, because they so stated in writing. If plaintiff's mortgage was unquestionably good he had no reason to contract because he was already safe. If defendent was binding himself to indemnify, he had no reason to contract because he was assuming all liability and getting nothing of value in return. If these parties were doing the logical thing, sharing the proceeds of the sale between themselves, giving plaintiff the full benefit of his mortgage as a first lien on the property and dividing the risk as to other claimants, defendant financing the litigation without loss to plaintiff, and plaintiff taking the loss if it failed, then the interpretation contended for by defendant not only comports with the ordinary meaning of the language used, but squares with the logic of the situation.

If we go beyond the contract itself and resort for interpretation to plaintiff's testimony above mentioned, and on which he relies, we must reach the same conclusion. If the statement of defendant and his counsel that there was

''no chance of loss'' was an assurance of absolute indemnity and not a mere expression of their confidence in the favorable outcome of possible litigation, defendant was obtaining no advantage by the contract and plaintiff would have insisted upon that assurance being expressly stated in the instrument itself.

As against what thus appears to us the simple solution of this dispute we next inquire if there be any legal rules or binding authority to the contrary. None in this jurisdiction are cited or known to us. Plaintiff relies entirely on *Grant v. Lawrence,* 79 Hun, 565, 29 N. Y. S. 901. We think it gives him no support. The defendant there owned certain patents and sold the plaintiff the right to manufacture thereunder. The latter questioned the protection afforded him by the patents and accordingly obtained a contract ''to be defended from trouble about patents.'' This the court interpreted—correctly it seems to us—as a contract to indemnify. A lawsuit is certainly a ''trouble,'' but ''trouble'' is not necessarily limited to lawsuits. There ''trouble about patents'' was a phrase requiring interpretation and, properly resorting to the surrounding facts and circumstances, was correctly interpreted. Here ''defend against all lawsuits'' is definite and specific. It is confined to one kind of trouble and one kind of defense. If it is the subject of interpretation, plaintiff's own testimony has interpreted it against him as above noted.

2. Plaintiff says the attorneys employed by defendant ''conducted said defense in a negligent and inefficient manner'' by reason whereof Kortz procured a judgment against him and levied on his property and he was compelled to ''seek the advice and aid'' of others who performed services for him of the reasonable value of $150. He does not say what the lawyers did or omitted, hence his charge that they were negligent and inefficient is a legal conclusion. He does not say he paid, or is obligated to pay, those whose ''advice and aid'' he obtained. In fact he seems scrupulously to avoid the use of the

word "employed." He also states in his complaint "that plaintiff knowing the standing and reputation of * * * said attorneys * * * consented to cooperate with them," etc. This was three days before the date of the contract in question and these were the attorneys who were to be employed, and were employed, to represent plaintiff in the Kortz litigation. Whatever mistakes they made, if any, in this employment, it is not questioned that they were men of professional standing and ability, and it is thus admitted that plaintiff agreed to their employment, relying on his own personal knowledge of their fitness for the task. Under such circumstances, whatever their liability to him for their sins of omission or commission, defendant is not liable. He did not select them, they were agreed upon. When he paid them his obligation was fulfilled. In the discharge of their duties they were the employes of plaintiff, subject to his direction and control and responsible to him. The motion to strike was therefore properly sustained.

Finding no reversible error in the record the judgment is affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE BUTLER and MR. JUSTICE MOORE concur.